IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Action No. 12-17 LPS |
| ) | |
| COSBURN WEDDERBURN, ) | |
| ) | |
| Defendant. ) | |

### FELONY INFORMATION

The United States Attorney for the District of Delaware charges that:

### COUNT I

I. **INTRODUCTION**

At all times relevant to this Information:

#### Co-Conspirator Xiang Li

1. Between in or about April 2008 and in or about June 2011, Xiang Li, a co-conspirator of Defendant COSBURN WEDDERBURN, engaged in a variety of crimes relating to the unauthorized access to, reproduction and distribution of copyrighted software produced by over 150 manufacturers. In particular, Xiang Li conspired and engaged in software "cracking;" that is, the willful circumvention of digital license files and access control software created to prevent unauthorized access to copyrighted software products. Xiang Li further conspired and engaged in the unauthorized international distribution and reproduction of "cracked" copyrighted computer software via the Internet. Commercial software is often designed with security features embedded in the software code for the purpose of preventing the unauthorized access or reproduction of the software. This Information will refer to software in which the access

1

controls have been circumvented and that is sold without authorization of the copyright owner as "pirated software." Xiang Li unlawfully distributed this pirated software over the Internet by selling the copyrighted works on websites with the domain names www.crack99.com, www.cad100.net, and www.dongle-crack-download.com (hereinafter referred to as the "Subject Websites").

2. The Subject Websites advertised over two thousand different "cracked" software products for sale at a fraction of their retail prices. The pirated software, most of which was created and copyrighted by companies based in the United States, is used in numerous applications including engineering; manufacturing; space exploration; aerospace simulation and design; mathematics; storm water management; explosive simulation; and manufacturing plant design. The prices listed for these pirated software products on the Subject Websites range from $20 to $1,200. The actual retail value of these products ranges from several hundred dollars to over one million dollars.

3. Xiang Li is the domain name registrant and operator of the Subject Websites. He also is the registered user of the Google email account china9981@gmail.com, which was used extensively to facilitate the sale and transfer of pirated software to website customers. Xiang Li received the illicit funds generated from the sale of the copyrighted works.

4. Between April 2008 and June 2011, Xiang Li distributed over 500 pirated copyrighted works to at least 325 purchasers located in the District of Delaware, at least 27 other states, and over 60 foreign countries. More than one-third of these purchases were made by individuals within the United States, including small business owners, military contractors, students, inventors, and engineers.

5. During the course of the conspiracy, Xiang Li caused lost retail value of these pirated copyrighted works in excess of $100,000,000.

6. On or about February 10, 2008, using an address in Chengdu, China, Xiang Li registered the domain name www.crack99.com. Xiang Li also registered the domain names www.cad100.net and www.dongle-crack-download.com on different dates in 2007 and 2008. Xiang Li used these three domain names to post Subject Websites, from which advertised and sold the copyrighted works.

7. On or about February 10, 2008, Xiang Li created a Google email account at the address: china9981@gmail.com. Xiang Li used this email account extensively to communicate with those who purchased pirated software from the Subject Websites. Xiang Li also used this email account to distribute pirated software to the website customers.

8. At all relevant times, the Subject Websites advertised for sale copyrighted software that has been "cracked;" that is, the access controls for the software have been disabled, removed or otherwise bypassed. The purchaser therefore would have unlimited use of the software.

9. The home pages of the Subject Websites listed a three-step process for acquiring pirated software: (1) submitting a request to purchase an advertised product to the email account china9981@gmail.com; (2) sending payment as instructed; and (3) either receiving downloadable files containing the pirated software via email or a mail shipment containing a disk with the software.

10. Between April 2008 and June 2011, Xiang Li utilized the email account china9981@gmail.com to process over 500 transactions in which he sold, without license

or authorization of the copyright holders, copies of approximately 400 pirated copyrighted works, the access controls to which had been circumvented.

## **Crack 99 Purchases by Defendant Cosburn Wedderburn**

11. Starting in September 2008, Defendant COSBURN WEDDERBURN utilized the email account coshwedd@hotmail.com to communicate with Xiang Li. Between September 2008 and November 2010, defendant COSBURN WEDDERBURN exchanged multiple e-mails with Xiang Li to obtain from Xiang Li pirated software programs with an estimated retail value exceeding $1,000,000. These software programs have a broad range of applications including electric engineering, aerospace, telecommunications design and electronic design automation.

12. On or about the dates below, Defendant COSBURN WEDDERBURN obtained the following pirated software programs through Xiang Li, knowing that neither he nor Xiang Li had copyright authorization.

| Date | Program | Retail Value |
| --- | --- | --- |
| September 3, 2008 | Ansoft Designer 3.5 | $25,000 |
| September 11, 2008 | Agilent Advanced Design System 2008 | $229,000 |
| September 11, 2008 | Modelism SE 6.3d | $19,000 |
| September 20, 2008 | Ansoft HFSS 10 | $200,000 |
| September 20, 2008 | Ansoft SIWave 3.0 | $10,000 |
| September 21, 2008 | Ansoft Nexxim | $25,000 |
| September 16, 2009 | Agilent System Vue2009.05 | $45,000 |
| September 16, 2009 | OPNET Modeler 14.0 | $25,000 |
| September 16, 2009 | Matlab R2009B | $130,000 |
| September 22, 2009 | Satellite Tool Kit 8.1 | $150,000 |
| October 25, 2010 | COMSOL Multiphysics 4.0 | $185,000 |
| November 19, 2010 | Autodesk Inventor 2011 | $8,000 |

4

13. During the course of the conspiracy, Defendant COSBURN WEDDERBURN sent Western Union payments to Xiang Li in Chengdu, China, for the pirated software listed above.

## II. OBJECTS OF THE CONSPIRACY

14. It was an object of the conspiracy to unlawfully obtain commercial advantage and private financial gain through the willful and unauthorized circumvention of digital access controls of copyrighted software and through the sale and distribution of such software via the Internet.

15. It was an object of the conspiracy to unlawfully engage in monetary transactions in property derived from the unlawful infringement of copyrighted software.

## III. MANNER AND MEANS OF THE CONSPIRACY

16. It was a part of the conspiracy that Defendant COSBURN WEDDERBURN obtained unauthorized copies of copyrighted works, including computer software, by means of the Internet, private carriers, and mail services.

17. It was further part of the conspiracy that Defendant COSBURN WEDDERBURN trafficked in and utilized technologies, products, services, and devices that were primarily designed and produced for the purpose of circumventing the digital access controls and copy prevention systems designed to prevent unauthorized access and copying of copyrighted works.

18. It was further part of the conspiracy to distribute these copyrighted works without a license, permission, or other authorization from the owners of the copyrighted works.

## IV. OVERT ACTS

19. It was further part of the conspiracy that the following acts in furtherance of and to affect the objects of the conspiracy were committed in the District of Maryland and elsewhere. On or about the dates below, Defendant COSBURN WEDDERBURN obtained the following pirated software programs through Xiang Li, knowing that neither he nor Xiang Li had copyright authorization.

| Date | Program | Retail Value |
| --- | --- | --- |
| September 3, 2008 | Ansoft Designer 3.5 | $25,000 |
| September 11, 2008 | Agilent Advanced Design System 2008 | $229,000 |
| September 11, 2008 | Modelism SE 6.3d | $19,000 |
| September 20, 2008 | Ansoft HFSS 10 | $200,000 |
| September 20, 2008 | Ansoft SIWave 3.0 | $10,000 |
| September 21, 2008 | Ansoft Nexxim | $25,000 |
| September 16, 2009 | Agilent System Vue2009.05 | $45,000 |
| September 16, 2009 | OPNET Modeler 14.0 | $25,000 |
| September 16, 2009 | Matlab R2009B | $130,000 |
| September 22, 2009 | Satellite Tool Kit 8.1 | $150,000 |
| October 25, 2010 | COMSOL Multiphysics 4.0 | $185,000 |
| November 19, 2010 | Autodesk Inventor 2011 | $8,000 |

## V. CHARGING PARAGRAPHS

20. Paragraphs 1-19 are hereby incorporated by reference as if fully set forth in full.

21. Between in or about September 2008 and in or about November 2010, in the District of Maryland and elsewhere, Defendant COSBURN WEDDERBURN, Xiang

Li, and others known and unknown to the grand jury, conspired and agreed to commit an offense against the United States, to wit, during a 180-day period, to willfully, and for the purpose of private financial gain, reproduce and distribute at least ten infringing copies of one or more copyrighted software products, with a total retail value of more than $2,500, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319(a) and (b)(1).

All in violation of Title 18, United States Code, Sections 371 and 2.

## FORFEITURE ALLEGATIONS

22. As a result of the offense alleged in this Information, Defendant COSBURN WEDDERBURN shall forfeit to the United States, pursuant to Title 17, United States Code, Sections 506(b) and 509(a), and Title 18 United States Code, Section 2323, all copies manufactured, reproduced, distributed, sold, or otherwise used, intended for use, or possessed with intent to use in violation of the offense under Section 506(a), and all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies may be reproduced, and all electronic, mechanical, and other devices for manufacturing, reproducing, and assembling such copies, and any property used, or intended to be used in any manner or part, to commit or facilitate the commission of the offense charged in this Information.

23. Furthermore, upon conviction of the offense charged in this Information, Defendant COSBURN WEDDERBURN shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. § 2319.

24. If any of the property described above, as a result of any act or omission

of Defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) (as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c)).

CHARLES M. OBERLY, III
UNITED STATES ATTORNEY

By: _____
    David L. Hall
    Assistant United States Attorney

By: _____
    Edward J. McAndrew
    Assistant United States Attorney

Dated: 13 MARCH 2012

